## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2019, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David K. Payne
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: K.B., J.K.E., J.E. & K.E. (Minor Children), Children Alleged to be Children In Need of Services,

and

A.E. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

December 30, 2019

Court of Appeals Case No. 19A-JC-1956

Appeal from the LaPorte Circuit Court

The Honorable Thomas Alevizos, Judge
The Honorable W. Jonathan Forker, Magistrate

Trial Court Cause Nos.
46C01-1806-JC-72
46C01-1806-JC-73
46C01-1806-JC-74
46C01-1806-JC-75

**Baker, Judge.**

[1] A.E. (Mother) appeals the trial court's order finding her four children to be children in need of services (CHINS), arguing that the evidence is insufficient to support the adjudication. Finding the evidence sufficient, we affirm.

## Facts[1]

[2] Mother has four children: K.B., born in May 2008; J.K.E., born in June 2010; J.E., born in May 2015; and K.E., born in May 2017 (collectively, the Children). B.E. (Father) is the father of J.K.E., J.E., and K.E., and is married to Mother.[2]

[3] Mother, Father, and the Children lived together in the marital home. In May 2018, Father became angry at Mother after seeing some text messages on her phone and hit her in the head in the presence of the older two children. As a result of the incident, Father was charged with Level 6 felony domestic battery.

[4] At some point in June 2018, Mother and Father began arguing again. Mother was afraid that the arguments would escalate, so she left the home and went to a hotel. On June 16, 2018, Father found the Children home alone. He became angry and punched a mirror, breaking the mirror and injuring his hand. Father

---

[1] We remind counsel for the State that Indiana Appellate Rule 46(A)(6)(c) states that the statement of facts in an appellate brief "shall be in narrative form and shall not be a witness by witness summary of the testimony." While that section relates specifically to the appellant's brief, Rule 46(B) states that the appellee's brief "shall conform to Section A of this Rule" with certain exceptions not relevant here.

[2] Neither Father nor the father of K.B. participates in this appeal.

called maternal grandmother (Grandmother) to ask her to get the Children so that he could go to the hospital for treatment of his injury.

At some point on June 16, 2018, Mother came to Grandmother's home to get the Children but Grandmother refused to let them leave with her. Therefore, Mother called the police, and at some point during the day, a report alleging neglect or abuse was made to the Department of Child Services (DCS). While police were there, Mother changed K.E.'s diaper and noticed a severe diaper rash that she claims appeared overnight; she believed it was severe enough that it required a trip to the emergency room.[3]

Mother told the DCS Family Case Manager (FCM) that she has struggled for years with an opiate addiction and had a prescription for Suboxone to help her with that struggle. The FCM did a drug screen on Mother on June 16, and while it was negative for Suboxone, it was positive for amphetamine and methamphetamine. Father's drug screen that same day was positive for amphetamine, methamphetamine, THC, cocaine, and opiates. DCS removed the Children from their parents' care and custody and placed them in relative care with Grandmother.

On June 18, 2018, DCS filed a petition alleging that the Children were CHINS. At a hearing that occurred the next day, the trial court ordered the parents to submit to drug screens. Despite that order, neither Mother nor Father

---

[3] Eventually, K.E. received medical treatment and a prescription ointment for the diaper rash.

submitted to any more drug screens before the factfinding hearing occurred on September 4, 2018.

[8] After the Children were placed with Grandmother, she was authorized to supervise their visits with Mother and Father. At some point, DCS changed the visits to be supervised by an agency. Grandmother reported to a service provider in July that both parents had left the state to "'get their life together'" before spending time with the Children, though they did have phone conversations with the Children while they were gone. Tr. Vol. II p. 53. Evidently, despite what they had told Grandmother, the parents did not actually leave the state. They were aware that they could have supervised visits at an agency but continued to contact the Children only over the phone. At the time of the factfinding hearing, the parents had had no face-to-face contact with the Children in six weeks.

[9] At the time of the factfinding hearing, Mother was living in the marital home. Father had left the home at Mother's insistence several days earlier when he was charged with possession of an unlawful syringe. Mother testified that if she were to be screened on the day of the hearing, she would be clean. On September 5, 2018, the trial court found the Children to be CHINS without issuing any findings of fact or conclusions of law.

[10] A dispositional hearing was held on September 26, 2018. At that hearing, it was reported that despite Mother's testimony, the drug screen she completed on the day of the factfinding hearing had tested positive for methamphetamine.

Mother and Father submitted to another drug screen on September 13, 2018, and they both tested positive for methamphetamine, THC, cocaine, and heroin. The trial court ordered Mother and Father to participate in substance abuse treatment, individual therapy to address domestic violence, and random drug screens.

[11] Mother appealed in October 2018. In May 2019, this Court entered a memorandum opinion remanding the case for the trial court to enter written findings of fact and conclusions of law as required by Indiana Code section 31-34-19-10. *In re K.B.*, No. 18A-JC-2603 (Ind. Ct. App. May 28, 2019).

[12] On remand, the trial court entered amended factfinding and dispositional orders on July 23, 2019. The amended factfinding order focused on the parents' history and ongoing substance abuse, noting that they both tested positive for illegal substances on June 16, 2018, when the Children were in Father's care (after he found them home alone) and Mother wanted to take the children into her care (though Grandmother refused). The trial court found that their "drug use is more than an isolated, one-time event; instead, their use is indicative of a serious drug addiction problem which requires treatment. Coercive intervention of the Court is necessary before serious tragedy befalls any of the children." Appealed Fact-Finding Order p. 4.

[13] The trial court also expressed concern about violence and anger in the home:

> There can be no doubt that the 2 older children witnessing Father
> hit mother had a negative impact on them. Then, in June, 2018,
> after Father was released from jail on the domestic battery

charge, he and Mother got into an argument. Although Mother tended to downplay the seriousness or severity of this argument in her testimony at the hearing, it was serious enough to cause her to leave the marital home and stay at a hotel. It was also serious enough to lead Mother to observe that the argument scared the children. The concern is that the parents have unresolved anger issues with each other that need to be addressed with therapy or other services which they have not attempted to address on their own.

In addition to the domestic battery and argument incidents noted above, Father, in a fit of anger towards Mother, then broke the bathroom mirror with his fist . . . . And, although the evidence does not indicate whether the children witnessed it, it appears that the children were at least home when Father broke the mirror.

It thus appears that the anger issue is not limited to an isolated, one-time domestic battery event, but that it is an ongoing, festering issue which, if left unchecked and untreated, will only further negatively impact the children's emotional and mental health, if not also their physical well-being.

*Id.* at 4-5 (paragraph breaks added). Finally, the trial court noted its skepticism regarding Mother's testimony that K.E.'s severe diaper rash had developed overnight: "common sense and experience dictates [sic] that a rash with such severity did not develop in an hour or two before the children were discovered home alone. . . . The real issue is that neither parent had a clue that [K.E.] had diaper rash, much less severe diaper rash . . . ." *Id.* at 5. Mother now appeals.

# Discussion and Decision

[14] Our Supreme Court has explained the nature of a CHINS proceeding and appellate review of a CHINS finding as follows:

> A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.,* 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*
>
> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.,* 919 N.E.2d at 105.

*In re K.D.,* 962 N.E.2d 1249, 1253-54 (Ind. 2012) (footnote and internal header omitted).

[15] Here, DCS alleged that the Children were CHINS pursuant to Indiana Code section 31-34-1-1, which provides as follows:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision . . . ; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Our Supreme Court has interpreted this provision to require "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.,* 2 N.E.3d 1283, 1287 (Ind. 2014).

[16] Mother argues that the evidence is insufficient to establish that the Children's physical or mental condition is seriously endangered as a result of the actions of their parents. We disagree.

[17] First, there is evidence in the record of the parents' serious, ongoing substance abuse. On the day the Children were removed, Mother tested positive for amphetamine and methamphetamine and Father tested positive for amphetamine, methamphetamine, THC, cocaine, and opiates. In the months

leading up to the factfinding hearing, both parents refused to submit to further court-ordered drug screens. At the factfinding hearing, Mother testified that she would test clean if she were screened that day. But it was revealed at the subsequent dispositional hearing that in fact, Mother had tested positive for methamphetamine on the day of the factfinding hearing. Then, just over a week later, both parents tested positive for methamphetamine, THC, cocaine, and heroin.

[18] Mother argues that there is no evidence that she used drugs in the presence of or near the Children. But DCS is not required to make such a showing to support a CHINS adjudication. This Court has considered and dismissed a similar argument in *In re Des.B.*, noting that the mother was "an extensive drug user" and concluding that her "extensive drug use could affect her ability to parent and her children's well-being and safety in the home." 2 N.E.3d 828, 837-38 (Ind. Ct. App. 2014) (internal quotation marks omitted). We echo those same concerns in this case given the many serious, addictive, and behavior- and judgment-altering substances at issue.

[19] Furthermore, as noted by the trial court, on the day Grandmother refused to release the Children into the care of Mother, causing Mother to call the police in an attempt to get the Children back, Mother tested positive for amphetamine and methamphetamine. And that same day, the Children had been in Father's care—a day when he, too, tested positive for multiple illegal substances. Under these circumstances, we have little difficulty concluding that the Children's

physical or mental condition is seriously endangered as a result of Mother's and Father's substance abuse.

[20] Second, with respect to domestic violence, the record shows that Father hit Mother in front of the Children, leading to a domestic battery charge; several days later, Father and Mother had such a serious argument that it scared the Children and necessitated Mother checking into a hotel; a few days later, Father became so angry when he found the Children home alone that he punched and broke a mirror, causing an injury that was serious enough that he had to go to the hospital for treatment.

[21] Mother's attempt to deflect and reframe by focusing only on the "isolated" physical altercation is unpersuasive. Appellant's Br. p. 12. There is sufficient evidence supporting the trial court's conclusion that there is "an ongoing, festering issue" of anger and domestic violence that must be addressed to keep the Children safe. Appealed Fact-Finding Order p. 5. It is well established that a child's exposure to domestic violence is serious and traumatic and can support a CHINS finding. *E.g.*, *In re N.E.*, 919 N.E.2d at 105; *see also In re E.M.*, 4 N.E.3d 636, 644-45 (Ind. 2014) ("A lack of beatings therefore does not equate to a lack of abuse, nor does the children's tender age equate to a lack of harm. Infants as young as fifteen months exhibit behavioral disturbances from spousal violence," including symptoms akin to post-traumatic stress disorder in adults.)

[22] The fact that in this case, the Children have not yet experienced physical or lasting emotional harm does not mandate a different result. We need not wait

until a child is physically or emotionally harmed to intervene; instead, a child is a CHINS if his or her physical or emotional condition is seriously *endangered*. *E.g.*, *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011). Here, we find that the trial court did not err by concluding that the evidence supported precisely that conclusion.

[23] Finally, as to K.E.'s severe diaper rash, Mother insists that the rash appeared overnight. The trial court did not find that testimony to be credible given the severity of the rash, and we will not second-guess that assessment. It may be true that the rash, standing alone, would not support a CHINS finding, but here, it is accompanied by a wealth of other evidence of the serious endangerment of the Children's physical and emotional well-being.

[24] In sum, we find the evidence sufficient to support the trial court's conclusion that the Children are CHINS.

[25] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.